IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK LANGENFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-CV-619-TCK-FHM |
| | ) | |
| BANK OF AMERICA, N.A. (USA); | ) | |
| CHASE BANK USA, N.A.; | ) | |
| CITIBANK (SOUTH DAKOTA) N.A.; | ) | |
| MBNA AMERICA, now known as | ) | |
| FIA CARD SERVICES, INC.; | ) | |
| WOLPOFF & | ) | |
| ABRAMSON, LLP; and | ) | |
| FREDERICK J. HANNA & | ) | |
| ASSOCIATES, PC; | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Motion to Reconsider Denial of the Plaintiff's Petition for Voluntary Dismissal ("Motion to Reconsider") (Doc. 241), wherein Plaintiff urges the Court to reconsider its Order denying his motion to voluntarily dismiss his claims without prejudice. For the reasons set forth below, the Motion to Reconsider is hereby GRANTED. The Court's Order of May 22, 2007 (Doc. 240) is hereby VACATED, and this Order is SUBSTITUTED as the Court's ruling on Plaintiff's Petition for Voluntary Dismissal ("Motion to Dismiss").

I.  **Factual Background**

Plaintiff is an individual who entered several open-ended credit transactions from 1997 to 2003 and incurred debt thereon. On September 27, 2005, Plaintiff filed suit against several Defendants, all of which are either creditors or collection agencies, alleging violations of the Oklahoma Uniform Consumer Credit Code, Okla. Stat. tit. 14A, § 1-101, *et seq.* and the federal

Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*[1] Plaintiff alleges, *inter alia*, that Defendants failed to properly respond to billing error notices sent to Defendants by Plaintiff. Plaintiff seeks the following relief: (1) reducing debt owed to Defendants "by the statutory forfeiture of $50" pursuant to 15 U.S.C. § 1666(e); (2) statutory damages of $1000 pursuant to each violation of Oklahoma and federal law; (3) costs and attorneys' fees; (4) an injunction requiring Defendants to notify any relevant entities that he is not delinquent on any account and to refrain from reporting him to further collection agencies. (Second Am. Compl. 9-10.) At the time suit was filed, Plaintiff was represented by Mitchel, Gadton, Riffel, & Riffel ("MGRR") pursuant to a contingent fee agreement.

There are six remaining Defendants, four of which are creditors and two of which are collection agencies. The four remaining creditor Defendants are Defendant Chase Bank USA (N.A.) ("Chase"); Citibank (South Dakota) N.A. ("Citibank"); Bank of America N.A. (USA) ("Bank of America"); and MBNA America Bank ("MBNA").[2] Chase asserted a counterclaim to recover Plaintiff's unpaid debt in the amount of $22,810.22. Bank of America asserted a counterclaim to recover Plaintiff's unpaid debt in the amount of $12,244.03.[3] The remaining collection agent Defendants are Frederick J. Hanna & Associates ("Hanna"), which served as a collection agent for Bank of America, and Wolpoff & Abramson ("Wolpoff"), which served as a collection agent for MBNA. These two Defendants have not asserted counterclaims.

---

[1] The case was removed to this Court on October 31, 2005. The Court granted Plaintiff leave to file a First Amended Complaint, which was filed on December 29, 2005 (Doc. 55) and a Second Amended Complaint, which was filed on February 10, 2006 (Doc. 72).

[2] Bank of America and MBNA are now known collectively as FIA Card Services, Inc.

[3] In a brief submitted on June 13, 2007, Citibank withdrew its counterclaim against Plaintiff because it sold his account to a third party.

On July 5, 2006, MGRR moved to withdraw as counsel for Plaintiff based on a conflict of interest.[4] Over the objection of Chase, the Court granted the motion to withdraw and ordered Plaintiff to secure other counsel or to enter an appearance on his own behalf. Upon request, Plaintiff was granted additional time to secure counsel. Plaintiff was unable to secure additional counsel by the deadline of November 24, 2006 and decided to continue prosecution of the case pro se.

On December 6, 2006, after conducting a scheduling conference attended by all parties, Magistrate Judge Joyner entered a Scheduling Order to govern the remainder of the case. This Scheduling Order set a dispositive motion deadline of March 14, 2007 and a trial date of July 16, 2007. On January 16, 2007, Defendants took Plaintiff's deposition. On February 7, 2007, Plaintiff stipulated to dismissal of Defendants NCO Financial Systems, Inc. and Client Services, Inc. On February 13, 2007, Plaintiff filed a motion to dismiss Defendant Alliance Once, to which no objection was filed, and which was granted by minute order on May 7, 2007. Plaintiff did not move to dismiss his claims against any other Defendants.

On February 28, 2007, Plaintiff filed a motion to strike a settlement conference set for March 5, 2007. Plaintiff represented that "despite depositions and discovery, the Plaintiff and the Defendants remain firmly committed to their legal positions regarding the cause of action and that that [sic] no substantive agreement can be derived from conducting the Settlement Conference." (*See* Doc. 213.) The settlement conference was stricken. In accordance with the Court's Scheduling Order, the remaining Defendants filed motions for summary judgment by March 14, 2007.[5]

---

[4] In the Motion to Reconsider, Plaintiff claims that MGRR refused to continue representation based on Plaintiff's failure to pay a $30,000 retainer.

[5] Wolpoff had previously filed a motion for summary judgment on November 27, 2006, which is fully briefed.

On March 27, 2007, in advance of his deadline to respond to the motions for summary judgment, Plaintiff filed a Chapter 13 bankruptcy proceeding in the United States Bankruptcy Court for the Eastern District of Virginia, Case Number 07-31158. Plaintiff did not respond to the motions for summary judgment by the required deadline. On April 27, 2007, two Defendants moved for an extension of deadlines in the December 6, 2006 Scheduling Order ("Motion for Extension"), explaining without significant explanation that, pursuant to the bankruptcy code, Plaintiff was entitled to additional time to respond to the motions for summary judgment. On May 1, 2007, the Court ordered additional briefing on the effect of the bankruptcy proceedings on this litigation. The Court stayed all counterclaims asserted against Plaintiff due to the automatic stay imposed by the bankruptcy proceeding.

Before the Court ruled on the Motion for Extension, Plaintiff filed the Motion to Dismiss, wherein Plaintiff informed the Court of his Chapter 13 bankruptcy proceedings and moved to dismiss his case. Plaintiff did not specify whether he wished to dismiss his claims with or without prejudice, and the Court construed the motion as one to dismiss without prejudice. Plaintiff offered very little explanation for his desire to dismiss.

The Court ordered Defendants to respond and state whether they objected to dismissal, including whether they objected to dismissal of any counterclaims asserted against Plaintiff. Defendants Wolpoff and Citibank did not object to dismissal.[6] Defendants Chase, Bank of America, MBNA, and Hanna objected to dismissal and urged the Court to rule on their pending motions for

---

[6] Although Citibank did not initially object to dismissal, Citibank submitted a brief dated June 13, 2007 raising objections to dismissal, and the Court construes this brief as an objection to dismissal. Wolpoff, in its additional briefing, indicated that it still does not object to dismissal without prejudice of the claims asserted against it.

summary judgment rather than dismiss Plaintiff's claims. Defendants argued that Plaintiff had forced them to defend the litigation, that they had expended resources to file their motions for summary judgment, and that Defendants would suffer prejudice if Plaintiff was simply allowed to dismiss his claims without prejudice two months before trial.

On May 22, 2007, the Court issued an Order ruling on Plaintiff's Motion to Dismiss and the Motion for Extension. The Court denied Plaintiff's Motion to Dismiss, finding that the relevant factors weighed against allowing Defendant to voluntarily dismiss his claims. The Court further found that the Trustee of Plaintiff's Chapter 13 bankruptcy proceeding had exclusive standing to pursue this litigation because it had become property of the Chapter 13 bankruptcy estate. The Court allowed the Trustee until May 29, 2006 to respond to the motions for summary judgment, granted the Motion for Extension, and struck certain scheduling order deadlines, to be reset after May 29, 2007.

On May 30, 2007, Plaintiff moved the Court to reconsider its denial of the Motion to Dismiss. Plaintiff cited error in the Court's conclusion regarding his standing to pursue his claims. Plaintiff also offered additional explanation for his desire to dismiss his claims. Plaintiff asserted for the first time that he "was willing to amend his Petition for Voluntary Dismissal to state dismissal with prejudice if the defendants are willing to dismiss their counterclaims." (Mot. to Reconsider 5.)

On June 6, 2007, the Court struck the trial date and all remaining deadlines in the case pending the Court's ruling on Plaintiff's Motion to Reconsider and/or the pending motions for summary judgment.[7] On June 11, 2007, Defendant Chase informed the Court that, pursuant to a

---

[7] The Court referred in this order to "Plaintiff's" failure to respond to the motions for summary judgment. The Court's referral to "Plaintiff" was in error and caused confusion. The Court intended to refer to the "Trustee's" failure to respond to the pending motions for summary

5

Consent Order, the United States Bankruptcy Court for the Eastern District of Virginia granted Chase relief from the automatic stay for the purpose of pursuing its counterclaims in this litigation.[8] On June 13, 2007, Plaintiff moved for additional time to respond to the pending motions for summary judgment, noting that, if given the opportunity, he would respond to the pending motions for summary judgment.

## II.     Motion to Reconsider

Plaintiff's Motion to Reconsider requests reconsideration of an interlocutory order and is therefore not recognized by the Federal Rules of Civil Procedure. *Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 326 (D. Kan. 2002). Motions to reconsider interlocutory orders are, however, routinely analyzed under the standards established for review of a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e). *Id.* Grounds warranting a motion to reconsider under Rule 59(e) include (1) an intervening change in the controlling law; (2) new evidence previously unavailable; and (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

The Court finds clear legal error in one aspect of its Order denying Plaintiff's Motion to Dismiss. The Court concluded, based on arguments presented and cases cited by Defendant Hanna, that Plaintiff lacked standing to prosecute (or dismiss) his claims in this case and that all claims must instead be prosecuted by the Trustee of Plaintiff's Chapter 13 bankruptcy estate. (*See* 5/22/07 Order 2-3.) The Court ordered the Trustee, rather than Plaintiff, to respond to the motions for summary

---

judgment.

[8]     To the Court's knowledge, no other Defendant has been granted similar relief from the stay.

judgment by the given deadline. (*Id.* 3.) Based on briefing now before the Court, including citations of law by Plaintiff and various Defendants other than Hanna, it appears this conclusion was in error because Plaintiff's bankruptcy proceeding was filed pursuant to Chapter 13 instead of Chapter 7. There are differences between the debtor's rights in these two types of bankruptcies. *See In re Bowker*, 245 B.R. 192, 195 (D.N.J. 2000) (stating that "[t]he debtor's right to possession and use of property in a chapter 13 case is quite different from a chapter 7 case" and explaining that Chapter 7 and Chapter 13 Trustees have different roles). Such differences were not explained in previous briefing, and the Court finds grounds to vacate its previous order.

The issue is whether Plaintiff, the Chapter 13 Trustee, or both have standing to prosecute this action. It is not clear from the text of the Bankruptcy Code whether a debtor or a trustee has standing to pursue a pre-petition lawsuit that has become part of the bankruptcy estate in a Chapter 13 case. Section 1306(b) of the Bankruptcy Code states that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." 11 U.S.C. § 1306(b). In addition, section 1303 gives the debtor the right to use property of the estate to the exclusion of the trustee. *See In re Bowker*, 245 B.R. at 195 & n.6 (citing section 1303, which sets forth the rights and powers of a debtor). Thus, it is arguable that a debtor's right to use property of the estate includes the right to continue to prosecute or defend a cause of action that became property of the Chapter 13 estate. *See id.* (citing 1 Keith M. Lundin, Chapter 13 Bankruptcy § 3.45, at 3-38 (2d ed. 1994)).

Courts have reached three different conclusions on this issue: (1) the chapter 13 trustee has exclusive standing to sue on behalf of the estate; (2) the chapter 13 debtor and the trustee have concurrent authority to proceed on behalf of the estate; or (3) the debtor has exclusive standing to

prosecute litigation on behalf of the bankruptcy estate. *Id.* at 194 (citing cases falling within each category). After extensive and persuasive analysis, the *Bowker* court concluded that the debtor alone has standing to control and be responsible for litigation that becomes part of the bankruptcy estate. *See id.* at 200. The court listed several "practical reasons" for this conclusion. *Id.* For example, the *Bowker* court listed: (1) the "huge, additional administrative burden" it would impose if the Chapter 13 trustee were the representative of the estate for litigation purposes; (2) the potential for disputes to arise between the trustee and the debtor; (3) the "impossible responsibility" of requiring that a Chapter 13 trustee be a party to all pending litigation, since Chapter 13 trustees typically have numerous cases; and (4) the fact that "it is only the Chapter 13 debtor who stands to gain or lose from efforts to pursue a cause of action that is an asset of the bankruptcy estate." *Id.*

The Tenth Circuit does not appear to have definitively ruled on this issue but has stated in dicta that a debtor's rights and powers in a Chapter 13 bankruptcy proceeding are "exclusive" of the Chapter 13 trustee, indicating that a debtor has the exclusive power to prosecute or defend lawsuits that are part of the bankruptcy estate. *See Hansen v. Green Tree Servicing*, LLC, 332 B.R. 8, 14 (B.A.P. 10th Cir. 2005) (stating that section 1303, which authorizes the debtor to use property of the estate, "contains the debtor's duties that are *exclusive* of those of the trustee") (emphasis added).

Based on the persuasive analysis set forth in *Bowker*, which appears to be supported by language from *Hansen*, the Court concludes that Plaintiff has exclusive standing to prosecute this action. This is the opposite conclusion reached by the Court in its prior Order. Due to this error of law, the Court hereby GRANTS the Motion to Reconsider and vacates the Court's May 22, 2007 Order. The following analysis will substitute as the ruling on Plaintiff's Motion to Dismiss.

8

II.     Motion to Dismiss

For the reasons set forth above, Plaintiff has exclusive standing to prosecute this litigation, which is now property of his Chapter 13 bankruptcy estate. However, the Court still must analyze whether Plaintiff will be allowed to dismiss the case over the objection of various Defendants, some of whom have filed counterclaims and all of whom have filed motions for summary judgment.[9] In its first Order, the Court determined that voluntary dismissal was improper due to the late stage of the proceedings, the pending motions for summary judgment, Defendants' effort and expense in preparing for trial, Plaintiff's insufficient explanation of the need for dismissal, and the overall prejudice Defendants would suffer if the Court dismissed the claims with prejudice. *See Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357-58 (10th Cir. 1996) (listing relevant factors). Although the Court will expand this analysis based on the additional briefing that is now before it, the Court reaches the same conclusion that it did in the previous Order.

Plaintiff desires to dismiss his claims without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).[10] "Rule 41(a)(2) requires a court to review a motion by a plaintiff to dismiss a complaint if the action has proceeded beyond service of an answer or of a motion for summary

---

[9]   Wolpoff does not object to dismissal, and the Court has, upon reconsideration, determined to grant Plaintiff's motion as to Wolpoff.

[10]   As explained above, Plaintiff indicates in the Motion to Reconsider that he is "willing to state dismissal with prejudice if the defendants are willing to dismiss their counter claims." In their responses, Defendants did not indicate a willingness to dismiss their counterclaims. In any event, this equivocal statement by Plaintiff cannot be viewed as a motion to dismiss with prejudice. If Plaintiff had moved to dismiss with prejudice, Defendants would have faced a greater burden in resisting dismissal. *See County of Santa Fe, New Mexico v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1049 (10th Cir. 2002) (holding that, although a district court does not *have* to grant a motion to dismiss with prejudice, "[i]n most cases, the normal analysis will result in the district court granting the plaintiff's motion to dismiss with prejudice" because "the defendant will have obtained a judgment on the merits that vindicates his rights").

judgment, and there is not unanimous agreement among all parties supporting the dismissal." *County of Santa Fe, N.M.*, 311 F.3d at 1049. "The purpose of the rule is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* (quotation omitted). When considering a motion to dismiss pursuant to Rule 41(a)(2), "the important aspect is whether the opposing party will suffer prejudice in the light of the valid interests of the parties." *Id.* (quotation omitted). "[I]t is the prejudice to the opposing party, rather than the convenience of the court, that is to be considered in passing on a motion for dismissal." *Id.* (quotation omitted).

A district court is to consider the following factors in evaluating the "legal prejudice" the opposing party will suffer: (1) the opposing party's effort and expense in preparing for trial; (2) excessive delay and lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation. *Id.* at 1048; *see also Phillips USA, Inc.*, 77 F.3d at 357-58; *Clark v. Tansy*, 13 F.3d 1407, 1411 (10th Cir. 1993). The factors are not exclusive, and a court must also consider any factors that are unique to the context of the case. *County of Santa Fe, N.M.*, 311 F.3d at 1048. Ultimately, the district court should endeavor to "insure substantial justice" to both parties and should "consider the equities not only facing the defendant, but also those facing the plaintiff." *Id.*

    A.    <u>Excessive Delay and Lack of Diligence/Present Stage of the Litigation</u>

This case was filed by Plaintiff in September 2005. After MGRR was allowed to withdraw, the Court allowed Plaintiff substantial time to find new counsel. Unable to do so, Plaintiff made a decision to represent himself. Appearing pro se, Plaintiff agreed to a new Scheduling Order to govern the remainder of the case. Defendants took Plaintiff's deposition, completed discovery, and

filed dispositive motions. During this time, Plaintiff did not express any desire to dismiss his case against these Defendants. In fact, Plaintiff made the decision to dismiss certain, but not all, Defendants prior to the dispositive motion deadline. Plaintiff also indicated that, based on the remaining parties' respective positions, any settlement efforts would be futile. Therefore, Plaintiff gave this Court, and the remaining Defendants, every reason to believe he was serious about prosecuting his claims.[11] Rather than respond to the motions for summary judgment, all of which raised slightly different legal arguments, Plaintiff filed bankruptcy and immediately moved to dismiss this case. This was approximately two months before the July trial date.

The Court finds that Plaintiff engaged in excessive delay and exercised a lack of diligence in deciding whether or not he wanted to dismiss his claims. The logical juncture for a dismissal without prejudice would have been when Plaintiff could not find substitute counsel. The Court would have granted a motion to dismiss without prejudice at that point in time. Instead, Plaintiff insisted on going forward with his claims against several Defendants, all of whom paid counsel to conduct discovery and prepare pretrial pleadings. It appears that Plaintiff only decided to file bankruptcy after he reviewed the motions for summary judgment. This was simply too late to make this decision.

B.  Explanation of Need for Dismissal

In the Motion to Dismiss, Plaintiff stated that his dismissal was "pursuant to the protections afforded under Title 11 of the United States Bankruptcy Code." The only explanation Plaintiff gave for his desire to dismiss was that he had filed bankruptcy and that "[t]he debt related to this cause

---

[11]   Plaintiff has done a credible job appearing pro se and has filed briefs containing legal arguments and authority.

of action were listed on his Schedule F of Creditors Holding Unsecured Non-Priority Claims." (Mot. to Dismiss 2.) In the Motion to Reconsider, Plaintiff offered further explanation:

> Plaintiff attempted to represent himself and found the time required was affecting his ability to perform his job as needed, which was placing his employment in jeopardy. The issue was amplified due to court deadlines and simultaneous filings for summary judgment from several of the defendants. For employment reasons, the Plaintiff could not invest adequate time to prepare effective responses without potentially losing his employment. When evaluating all the above issues and the cost to continue, the Plaintiff decided to file Chapter 13 bankruptcy in an attempt to repay the debt.

(Mot. to Reconsider 3.) Thus, Plaintiff's "need" for the dismissal is (1) he determined to repay his creditors in a Chapter 13 bankruptcy proceeding rather than challenge the debt in these proceedings; and (2) he no longer has time to adequately prosecute his claims.

The Court finds this to be an insufficient showing of need for dismissal. Abandoning this case and proceeding with bankruptcy has the effect of avoiding an adverse ruling on the motions for summary judgment that Plaintiff's own lawsuit generated and that Defendants have spent time and effort filing. Significantly, the Tenth Circuit has stated that "a party should not be permitted to avoid an adverse decision on a dispositive motion by dismissing a claim without prejudice." *Phillips USA, Inc.*, 77 F.3d at 358. With respect to his lack of time to prosecute his claims, the Court would be more sympathetic if Plaintiff was recently abandoned by counsel. However, that is not the case. Plaintiff made a decision in December 2006 to continue without counsel. Such decision has certain legal consequences that cannot be avoided on the eve of trial.[12]

---

[12] As stated by one Defendant, Plaintiff "should not now be permitted to slink away from the burdensome litigation that he has promoted simply because his plot to manipulate a nuisance value settlement . . . has utterly failed." (Citibank's Resp. to Pl.'s Mot. to Reconsider 3-4.)

### C.     Opposing Party's Effort and Expense in Preparing for Trial

As noted above, the case has been pending since the fall of 2005. Defendants have prepared joint status reports, answered three different complaints, attended scheduling and discovery hearings, conducted written discovery, and taken Plaintiff's deposition. Most significantly, Defendants have prepared motions for summary judgment and responded to this Court's Orders for briefing. Although this case does not involve voluminous discovery or pretrial work, the Court finds that Defendants have expended some effort and expense in order to obtain judgment in this case.[13]

For the reasons stated above, the Court finds that Defendants will suffer prejudice if Plaintiff is permitted to dismiss his claims without prejudice, and the Court will not allow such a dismissal at this point in the litigation.[14]

The Court ORDERS:

(1)     Plaintiff's Motion to Reconsider (Doc. 241) is GRANTED, and the Court WITHDRAWS its previous Order ruling on Plaintiff's Motion to Dismiss (5/22/07 Order, Doc. 240).

(2)     Plaintiff's Motion to Dismiss (Doc. 233) is DENIED IN PART AND GRANTED IN PART.

---

[13]     Because the Court struck all other scheduling order deadlines, Defendants are not currently expending resources to continue preparing for trial.

[14]     In addition, with respect to Defendants Chase and Bank of America, Plaintiff's case cannot be dismissed without prejudice if Defendants' counterclaims cannot remain pending for independent adjudication by the Court. See Fed. R. Civ. P. 41(a)(2) ("If a counterclaim has been pleaded . . . the action *shall not* be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."); see also 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2365 (explaining that court has ancillary jurisdiction over compulsory counterclaims but must have an independent basis of subject matter jurisdiction to maintain permissive counterclaims after dismissal without prejudice; further explaining that rule does not apply when plaintiff seeks dismissal with prejudice). The Court does not reach the issue but merely notes that the pendency of these counterclaims also does not weigh in favor of a dismissal without prejudice.

Based on the lack of any objection, Plaintiff's Motion to Dismiss as to Defendant WOLPOFF is granted, and Wolpoff is terminated as a party to the litigation. Plaintiff's Motion to Dismiss as to all other Defendants is denied.

(3)   Plaintiff's Motion for Extension of Time to Respond (Doc. 248) is GRANTED, and Plaintiff shall be allowed to respond to pending motions for summary judgment no later than August 15, 2007.[15]

(4)   Pursuant to the Notice of Relief from Automatic Stay (Doc. 245) and Exhibit A thereto, Chase has been granted relief from the automatic stay in order to prosecute its counterclaims against Plaintiff. Accordingly, Chase shall be allowed to pursue its counterclaims against Plaintiff notwithstanding the bankruptcy proceeding.

In light of the Court's ruling and the current status of these proceedings, the Court encourages the parties to discuss a stipulated dismissal of the case that would provide for a dismissal with prejudice of Plaintiff's claims, and a dismissal without prejudice of Chase and Bank of America's counterclaims.

ORDERED this __9__ day of ~~June~~, 2007.
                                   July

*Terence Kern*
TERENCE KERN
UNITED STATES DISTRICT JUDGE

---

[15] At this point, Plaintiff has failed to timely respond, and the motions are subject to being deemed confessed. Based on Plaintiff's employment related limitations and in considering the equities to all parties, the Court allows Plaintiff this extension of time to respond. The Court will not grant Plaintiff any further extensions.