**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| MARK LANGENFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 05-CV-619-TCK-FHM |
| | ) | |
| BANK OF AMERICA, N.A. (USA); | ) | |
| CHASE BANK USA, N.A.; | ) | |
| CITIBANK (SOUTH DAKOTA) N.A.; | ) | |
| MBNA AMERICA, now known as | ) | |
| FIA CARD SERVICES, INC.; | ) | |
| WOLPOFF & | ) | |
| ABRAMSON, LLP; and | ) | |
| FREDERICK J. HANNA & | ) | |
| ASSOCIATES, PC; | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court are Chase Bank USA, N.A.'s Motion for Attorney Fees and Prejudgment

Interest (Doc. 290) and FIA Card Services, N.A.'s Motion for Attorneys' Fees (Doc. 293).

**I.      Factual Background**

Defendant Chase Bank USA, N.A. ("Chase") seeks a total amount of $63,565.70 in fees,

which includes amounts expended for (1) defending Plaintiff's claims arising under the Truth in

Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") and Oklahoma state law; (2) prosecuting its

counterclaim for Plaintiff's unpaid debt in the total amount of $22,810.22; and (3) asserting claims

and seeking relief from the automatic stay imposed in Plaintiff's Virginia bankruptcy proceeding

("Bankruptcy Proceeding").   Defendant FIA seeks a total amount of $77,834.71 in fees, which

includes amounts expended for: (1) defending Plaintiff's TILA and state-law claims; and (2)

prosecuting its counterclaim for Plaintiff's debt in the total amount of $18,274.11.  As reflected in

1

Orders dated March 10, 2008 (Doc. 274) and July 3, 2008 (Doc. 283) and the Judgment entered July 3, 2008 (Doc. 283), Chase and FIA were successful in all aspects of this litigation, including defense of Plaintiff's TILA and state-law claims and prosecution of their counterclaims for Plaintiff's unpaid debt.[1]

Plaintiff held two relevant credit accounts with Chase, which the Court refers to as the "7308 Account" and the "8721 Account."  The cardholder agreement governing the 7308 Account provides: "DEFAULT/COLLECTION: . . . To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorney fees, and court costs, and all other expenses of enforcing our rights under this agreement."  (*See* Ex. A to Chase's Mot. for Summ. J.)  Similarly, the cardholder agreement governing the 8721 Account provides: "To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorney fees (for any attorney who is not a salaried employee), and court costs, and all other expenses of enforcing our rights under this agreement." (*See* Ex. B. to Chase's Mot. for Summ. J.)  The Court collectively refers to these provisions as the "Chase Fee Provisions."

Plaintiff held two relevant accounts with FIA, which the Court refers to as the "Bank of America Account" and the "MBNA Account."  The cardholder agreement governing the Bank of America Account provides:  "DEFAULT. . . . To the extent permitted by law, if you are in default, you will pay our collection costs, attorney fees (including allocated costs for attorneys who are employed by us), court costs, and all other expenses of enforcing our rights under this Agreement" ("Bank of America Fee Provision").  (*See* Ex. A to FIA's Mot. for Summ. J, Ex.1 at ¶ 7.12.)  The

---

[1]  For a detailed account of the facts and claims presented, see *Langenfeld v. Chase Bank USA, N.A.*, 537 F. Supp. 2d 1181 (N.D. Okla. 2008).

agreement governing the MBNA Account provides: "If you default, unless prohibited by applicable law, we can also require you to pay the collection and court costs we incur in any collection proceeding, and a reasonable attorney's fee if we refer your account for collection to an attorney who is not our salaried employee" ("MBNA Fee Provision"). (*See* Ex. A. to FIA's Mot. for Summ. J., at Ex. 2 at 3.)  The MBNA Fee Provision is more narrow than the Chase Fee Provisions and the Bank of America Fee Provision because it does not include fee-shifting language for "all other expenses of enforcing our rights under this agreement" but instead covers only attorney fees incurred when an account is referred "for collection."  The Bank of America Fee Provision and MBNA Fee Provision are collectively referred to as the "FIA Fee Provisions."

## II.    Discussion

Chase and FIA's only cited basis for an award of attorney fees arises from the Chase Fee Provisions and the FIA Provisions.[2]  "[T]he longstanding 'American Rule,' . . .  generally bars prevailing parties from recovering attorneys' fees in the absence of a statute or enforceable contract providing for such an award. *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 765 (10th Cir. 1997). However, "[w]here contracting parties have agreed that a breaching party will be liable for attorneys' fees, the purpose of the award is to give the parties the benefit of that bargain, and the court's responsibility is to enforce that bargain."  *U.S. for Use of C.J.C., Inc. v. W. States Mech. Contractors, Inc.*, 834 F.2d 1533, 1548 (10th Cir. 1987). "Normally, where the court is merely

---

[2]  TILA authorizes a plaintiff to recover attorney fees in any "successful action" but authorizes a successful defendant to recover attorney fees only "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment."  *See* 15 U.S.C. § 1692k(a)(3).  Neither Chase nor FIA cite § 1692k(a)(3) or argue that Plaintiff's bad faith entitles them to a fee award.

enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *Id.* In his response to Chase and FIA's motions, Plaintiff does not dispute that he received and agreed to the terms of the relevant cardholder agreements, including the fee provisions.[3] He contends, however, that defense of his TILA claim is not covered by such provisions.

A. Fees Expended for Prosecution of Counterclaims

Chase and FIA's counterclaims for Plaintiff's unpaid credit balances relate directly to Plaintiff's default under the cardholder agreements, and Chase and FIA are entitled to fees for prosecution of their counterclaims. Chase and FIA's prosecutions of these counterclaims were "collection costs" precipitated by Plaintiff's default and are clearly covered by the Chase Fee Provisions and the FIA Fee Provisions. However, prosecutions of these counterclaim were a very small aspect of the litigation. Plaintiff did not dispute that he owed the underlying debt; he merely asserted that TILA violations were so numerous as to eliminate such debt. The Court devoted significant discussion and analysis to the viability of Plaintiff's TILA claim but devoted only one paragraph to Chase and FIA's counterclaims. *See Langenfeld*, 537 F. Supp. 2d 1181; 7/3/08 Order (Doc. 283). Further, upon review of Chase and FIA's time entries in support of their fee

---

[3] Because it was not raised by Plaintiff, the Court does not reach the question of whether such cardholder agreements, which are generally unexecuted and in fine print, are enforceable. However, a cursory review of law indicates that such agreements are generally enforceable. *See* 20 Am. Jur. 2d Credit Cards and Charge Accounts § 31 (stating that "a credit card agreement is not unconscionable and unenforceable based on the alleged unequal bargaining power between the consumer and the issuing bank and the agreement's allegedly confusing nature"); *Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1365 (S.D. Fla. 2008) (holding that cardholder who disputed receipt of cardholder agreement was presumed to have received the agreement, that cardholder failed to follow the specified procedure for rejecting the terms of the agreement and continued using the credit card, that cardholder's actions constituted a legal acceptance of the terms, and that cardholder was therefore bound to arbitration provision contained therein).

applications, the Court found only a minimal number of entries referencing or mentioning the counterclaims. Nonetheless, to the extent there were fees expended for the purpose of prosecuting the counterclaims for Plaintiff's unpaid debt, such fees are recoverable under the Chase Fee Provisions and the FIA Fee Provisions.

B.  Fees Expended for Defense of TILA Claim

The crucial question is whether attorneys' fees incurred defending Plaintiff's TILA claim, which constitute the vast majority of time expended, fall within the scope of the relevant contractual provisions. Such fees are recoverable under the Chase Fee Provisions and the Bank of America Fee Provision if they constitute "collection costs" or if they constitute "expenses of enforcing [] rights" under the relevant agreements. Such expenses are recoverable under the MBNA Fee Provision only if they constitute "collection" expenses.

The Court concludes that defense of Plaintiff's TILA claims is not a "collection cost" or an "expense of enforcing" Chase and FIA's right to collect debt from Plaintiff. This is because successful defense of a TILA claim does not entitle a creditor to collect the underlying debt. Similarly, successful prosecution of a TILA claim does not entitle a cardholder to forgiveness of the underlying debt. If TILA violations are sufficiently numerous, the amount owed by a creditor may effectively cancel out any debt owed; however, a TILA violation does not itself result in elimination of the underlying debt. As explained by a Georgia district court,

> [t]he TILA claim may be won or lost regardless of the outcome of a claim for the underlying debt; likewise, a claim for the underlying debt may be won or lost regardless of the outcome of the TILA claim. When Congress enacted TILA, it added nothing to the rights of the parties vis-a-vis the indebtedness created by the credit transaction. Congress did provide that the successful TILA claimant could recover attorney's fees incurred in prosecuting it. It did not provide attorney's fees for parties to any other claim or controversy.

*Lacy v. Gen. Fin. Corp.*, 651 F.2d 1026, 1029 (D. Ga. 1981) (holding that plaintiff was only entitled to fees under TILA for her successful prosecution of TILA claim and not for successful defense of counterclaims for payment of the underlying debt). Although *Lacy* involved the question of whether a plaintiff was entitled to fees by TILA, rather than a contractual provision, the reasoning in *Lacy* that "a claim for the underlying debt may be won or lost regardless of the outcome of the TILA claim" helps explain why defense of a TILA claim is not a "collection cost" or a means of enforcing a creditor's rights under a credit obligation. Defense of a TILA claim has nothing to do with collecting the debt or enforcing the borrower's obligations, and the Court finds that Chase and FIA's defense of Plaintiff's TILA claim is not covered by the relevant fee provisions.

Chase cited a case affirming an award of attorney fees to a creditor where: (1) the creditor brought suit to collect an underlying loan obligation; (2) the borrower filed counterclaims asserting that the creditor violated TILA in making the loan; (3) the creditor was forced to defend TILA claims in the course of its prosecution of enforcement of the underlying debt, and (4) the loan documents contained a provision stating that "if they are placed in the hands of an attorney for collection, defendants will pay plaintiff's reasonable collection costs and that, if suit or action were to be filed, the prevailing party would pay reasonable attorney fees and court costs." *See Mortgage Mint Corp. v. Morgan*, 708 P.2d 1177, 1178-79, 1180 (Or. App. 1985). The court reasoned:

> Defendants argue that, although TILA provides that successful plaintiffs under the Act may recover attorney fees, 15 U.S.C. § 1640(a)(3), it does not provide for attorney fees for the defense against a TILA counterclaim. Here, however, plaintiff requested attorney fees under the loan documents and not under TILA. To obtain a judgment of foreclosure, plaintiff had to defend against defendant's TILA counterclaim. Attorney fees incurred in that defense are within the scope of the contractual provisions.

*Id.* at 1180 (citations omitted).

6

The Court disagrees with *Mortgage Mint* to the extent it implies that, in every case, defense of a TILA action is a "reasonable collection cost."  As explained above, successful defense of a TILA action does not help or hinder the collection of the underlying debt.  The Court further finds *Mortgage Mint* distinguishable on its facts because this case was filed by Plaintiff, and the counterclaims for the underlying debt were asserted by creditors as counterclaims.  The counterclaims played a minimal role in this litigation, and virtually all time expended was for the purpose of defending the TILA claim.  In such a situation, defense of the TILA claim is less like a "collection cost" because, but for the TILA action filed by Plaintiff, there would have been no collection effort whatsoever.  *Cf. Hefferman v. Bitton*, 882 F.2d 379, 384 (9th Cir. 1989) (stating that "several state court cases have awarded attorney's fees to lenders who have defended TILA counterclaims when suing on their notes" and citing *Mortgage Mint* but holding that such cases did not apply because the lenders in that case had not sued on the underlying notes).  Accordingly, Chase and FIA are not entitled to attorneys' fees for defense of Plaintiff's TILA claim.[4]

C.      Fees Expended in Bankruptcy Proceeding

Chase also seeks fees for time expended by Virginia counsel related to the Bankruptcy Proceeding.  Even assuming such fees are covered by the relevant fee provisions, the Court finds no reason to award such fees in this case and believes such fees are more properly awarded in the Bankruptcy Proceeding.  The bankruptcy court, and not this Court, is in the best position to determine whether time entries related to such proceeding are reasonable.  *But see Mortgage Mint*, 708 P.2d at 1180 (awarding fees for time expended in a related bankruptcy proceeding because

---

[4]  FIA's only cited case, *Krutchkoff v. Fleet Bank, N.A.*, 960 F. Supp. 541, 551 (D. Conn. 1996), was not helpful because, although fees were awarded to a creditor on a counterclaim, the court provided no explanation as to the basis for the award.

7

the creditor "could not foreclose in circuit court unless the bankruptcy court lifted the automatic stay, and "the court was correct to include in the award of attorney fees an amount for services in bankruptcy court").

## III.    Conclusion

Chase Bank USA, N.A.'s Motion for Attorney Fees and Prejudgment Interest and FIA Card Services, N.A.'s Motion for Attroneys' Fees (Docs. 290, 293) are GRANTED only to the extent time was expended for purposes of prosecuting their counterclaims, and such time was simultaneously recorded in a time entry expressly referencing prosecution of the counterclaim. They are DENIED in all other respects. If desired, Chase and FIA may file new time entries consistent with this Opinion and Order no later than Friday, May 7, 2009. Plaintiff may challenge the reasonableness of these time entries no later than Friday, May 21, 2009. If no time entries are submitted by this date, the Court will assume that Chase and FIA no longer wish to pursue their fee applications in light of the Court's rulings.

ORDERED this 29th day of April, 2009.

_____
TERENCE KERN
UNITED STATES DISTRICT JUDGE